## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM MANGINO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-00370 |
| | ) | Judge Nora Barry Fischer |
| PENNSYLVANIA TURNPIKE | ) | |
| COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.     Introduction

This matter comes before the Court on Defendant Turnpike, Soft Drink, Beer Distributor and Miscellaneous Employees, Teamsters Local Union No. 250, International Brotherhood of Teamsters' ("Local 250") Motion to Dissolve the Permanent Injunction, filed on September 23, 2009. (Docket No. 132).  By this motion, Local 250 seeks to have the Court enter an order dissolving the permanent injunction contained in the parties' settlement agreement and the Consent Judgment entered on June 16, 2009, which currently prevents the withholding of fair share fees from Plaintiffs. (*See* Docket No. 127 at 1). For the reasons discussed herein, Local 250's Motion to Dissolve the Permanent Injunction is DENIED, without prejudice.

### II.     Procedural History

After numerous attempts to settle this matter, the parties executed a settlement agreement and a Consent Judgment on June 2, 2009. (*See* Docket No. 123). On June 16, 2009, the Court entered the Consent Judgment (Docket No. 127), entering judgment in favor of Plaintiffs and against all Defendants to the extent indicated in accordance with this Court's Memorandum Opinion and Order of September 25, 2008 granting Plaintiffs' Motion for Summary Judgment on

liability.[1] (Docket Nos. 127, 66, and 67, respectively). The terms of the parties' settlement agreement were incorporated into the Consent Judgment, but the settlement agreement was not filed of record. The case was then closed.

Local 250 filed the instant motion on September 23, 2009. (Docket No. 132). Plaintiffs filed their Brief in Opposition on October 5, 2009. (Docket No. 133). Defendant Pennsylvania Turnpike Commission did not join or file any opposition to the motion. On October 8, 2009, the Court set this matter down for a hearing on the motion for November 23, 2009.[2] (Text Entry, 10/8/09). The hearing was held on November 23, 2009, during which Court heard oral argument.[3] (Docket No. 137). At the close of the hearing, Plaintiffs' counsel requested leave until November 30, 2009 by which to submit further authority in opposition to Local 250's motion, which the Court granted. (*Id.*).  On November 24, 2009, Local 250 filed an affidavit by Gary Pedicone, Secretary-Treasurer and Principal Officer of Local 250, in support of its motion.

---

[1]

The permanent injunction is contained in the second paragraph of the Consent Judgment, which provides as follows:

> It is further ordered that Defendants are permanently enjoined from taking any action to further withhold fees from Plaintiffs' wages until such time as a procedure fully complying with the requirements of *Teachers Local No. 1 v. Hudson*, 475 U.S. 292, 306-10 (1986), *Lenhart v. Ferris Faculty Ass'n.*, 500 U.S. 507 (1991), and this Court's Memorandum Opinion and Order of September 25, 2008 (Docket Nos. 66 and 67), is established, and until further Order of Court.

(Docket No. 127 at 1).

[2]

In the interim on November 12, 2009, Plaintiffs filed a Supplemental Motion for Attorney Fees, Costs and Expenses incurred in defending the present motion (Docket No. 135), to which Local 250 responded on November 13, 2009. (Docket No. 136). This motion is addressed by the Court in a separate Memorandum Order.

[3]

The Court also heard argument on Plaintiffs' motion for attorney fees, referenced in note 2. (*See* Docket No. 137).

(Docket No. 138). Plaintiffs submitted their supplemental authority on November 30, 2009.[4] As briefing has concluded on the motion, it is now ripe for disposition.

### III.    Standard for Dissolution of a Permanent Injunction

Rule 60 provides an escape from an unfavorable judgment that "has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated, or [if] applying it prospectively is no longer equitable." FED. R. CIV. P. 60(b).  Relief under this rule is "an extraordinary remedy and may only be invoked upon a showing of exceptional circumstances." *In re Fine Paper Anitrust Litig.*, 840 F.2d 188, 194 (3d Cir. 1988)(quoting *Vecchione v. Wohlgemuth*, 558 F.2d 150, 159 (3d Cir. 1977)).

Rule 60(b)(5) authorizes relief from judgments such as injunctions which are prospective in operation. *Marshall v. Board of Educ., Bergenfield*, 575 F.2d 417, 425 (3d Cir. 1978). Even though a consent decree is a judicial act, "it has many of the attributes of a contract voluntarily undertaken, *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236-37 (1975); *United States Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir. 1979), and a party to a consent decree, having made a 'free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment,' bears a burden which 'is perhaps even more formidable than had they litigated and lost.'" *United States v. Wheeling-Pittsburgh Steel Corp.*, 818 F.3d 1077, 1088 (3d Cir. 1987); *see also Coltec Indus. v. Hobgood*, 184 F.R.D. 60, 61-62 (W.D. Pa. 1999). Before the modification of a consent injunction may be granted, the moving party must satisfy the heavy burden of showing circumstances so changed that "the danger which the decree sought to prevent has been 'attenuated to a shadow.'" *Int'l.*

---

4

This authority was initially submitted by email. The Court has instructed Plaintiffs' counsel to make it part of the record.

*Bhd. of Teamsters, et al. v. Western Pa. Motor Carriers Assoc.*, 660 F.2d 76, 85 (3d Cir. 1981)(citations omitted); *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977).

## IV.    Parties' Arguments

Local 250 contends that it has fully complied with the notice requirements of *Teachers Local No. 1 v. Hudson*, 475 U.S. 292, 306-10 (1986), and *Lenhart v. Ferris Faculty Ass'n.*, 500 U.S. 507 (1991). (Docket No. 132). It filed as an attachment to its motion its revised policies, its latest audited report, as well as the audited reports of its affiliates, the International Brotherhood of Teamsters ("IBT"), the Pennsylvania Conference of Teamsters ("PCT"), and Teamsters Joint Council 40 ("JC"). (Docket No. 132 at 2; Docket No. 132-3 - 132-9). Based on these revised polices and financial disclosures, Local 250 argues it is in compliance.

In response, Plaintiffs maintain that Local 250 has not met its burden of proving complete compliance with *Hudson* and *Lehnert* in order to modify the injunction. (Docket No. 133 at 3).   Plaintiffs contend that the union's policies and accounting procedures remain deficient in three separate ways. (*Id.* at 4).

First, Plaintiffs argue that the Union's policies and procedures for challenging a fee calculation remain constitutionally deficient due to the inclusion of paragraph 8 in the procedures calling for the decision of an arbitrator to be "final and binding." (Docket No. 133 at 4; Docket No. 132-9 at 48). At the November 23, 2009, Plaintiffs withdrew this argument upon Local 250's representations that this provision has been removed from its procedures. (*See* discussion, *infra*, at pgs. 6-7).

Plaintiffs next challenge the union's and its affiliates' calculation of chargeable expenses to nonmembers, as contained in their audited reports. (Docket No. 133 at 5; *see* Docket No. 132-9 at 46). Plaintiffs particularly object to the Union's and the PCT's advance reduction of

4

"organizing expenditures." (Docket No. 133 at 5-6).  Within the same vein, Plaintiffs object to the PCT's and the IBT's charges for "maintenance of membership status." (*Id*. at 6; Docket No. 132-9 at 40).   They further challenge the JC's and the PCT's charges for community involvement, media, "legislative activities" and "work-related issues." (Docket No. 133 at 6-7; Docket No. 132-9 at 21, 31).   All of these categories, Plaintiffs contend, are insufficiently limited and constitutionally vague in that they do not limit chargeable lobbying and public relations expenditures to activities directed toward the nonmembers' collective bargaining rights. (Docket No. 133 at 7).   Thus, they maintain that Local 250's and its affiliates' chargeability accounting violates the Supreme Court's holding in *Lehnert*, *supra*. (*Id*.).

Plaintiffs' third objection is to Local 250's financial disclosure provided for the PCT. Plaintiffs assert that this disclosure lacks sufficient specificity to allow informed objections to the fee calculation. (Docket No. 133 at 9-10; Docket No. 132-9 at 25-32). The disclosure provides five (5) categories of expenses divided between chargeable and nonchargeable expenditures: governance; executive administration; ideological and political contributions and expenses; publicity, flowers and gifts; and other general expenses. (Docket No. 132-9 at 29). Plaintiffs argue that the financial disclosure of the PCT, when compared to that of the Local 250 and its other affiliates, is substantially inferior to that provided by each and every other union receiving a portion of the nonmembers' fees. (Docket  No. 133 at 10).  Thus, Local 250's notice relating to PCT's categories does not meet *Hudson*'s standard for disclosure by failing to break its expenses into descriptive categories. (*Id*.).

V.   **Discussion**

Pursuant to the Supreme Court's precedent in *Hudson* and *Lehnert*, before the injunction may be dissolved, Local 250 must demonstrate that it has <u>fully complied</u> with all of the

constitutional requirements for the collection of fair share fees from Plaintiffs, the nonmembers. *See Chicago Teachers Union v.  Hudson*, 475 U.S. 292 (1986); and *Lehnert v. Ferris Faculty Ass'n.*, 500 U.S. 507, 519 (1991). The *Hudson* court held that the following requirements must be satisfied before agency fees may be constitutionally withheld: (1) adequate explanation of the basis for the fee; (2) a reasonably prompt opportunity to challenge the fee amount before an impartial decisionmaker; and (3) an escrow for the amounts reasonably in dispute while such challenges are pending.  *Hudson*, 475 U.S. at 305-307.  In order to protect a nonmember's First Amendment rights, the procedure for collecting agency fees must "be carefully tailored to minimize [such an] infringement."  *Id.* at 303.

With the above authority in mind, the Court will now address each of Plaintiffs' remaining objections to Local 250's revised policies and financial disclosures.[5]

### A. "Final and Binding" Provision

During the November 23, 2009 hearing, Local 250, through counsel, advised the Court that it inadvertently sent the wrong notice procedures to Plaintiffs on September 3, 2009, and that the wrong version was filed in support of the present motion. (Docket No. 132-9 at 1-2, Letter to Plaintiffs; Docket No. 132-9 at 49, Local 250's procedures). The version that should have been sent omitted the challenged paragraph 8 containing the "final and binding" provision, as Local 250 had agreed to delete that provision on August 11, 2009. (*See* Docket No. 132-7 at 1; Docket No. 132-8 at 1). On November 24, 2009, Local 250 filed the affidavit of Gary

---

[5]

At the November 23, 2009 hearing, Local 250 also raised an argument concerning Plaintiffs' objection raised in correspondence exchanged prior to Local 250's filing of the instant motion. Plaintiffs had objected to the lack of financial disclosure for the Local 250's affiliate, the Allegheny County Labor Council ("ACL"). (Docket Nos. 133-6 133-7, and 133-8). The union responded that because the ACL is not a labor organization and because Local 250 does not charge the nonmembers for monies it pays to the ACL, it was not required to provide audited reports for that affiliate. Plaintiffs conceded at the hearing that this argument is no longer being advanced because they agree with Local 250's position regarding the ACL. Therefore, the Court does not need to address this issue further.

Pedicone, the Secretary-Treasurer and Principal Officer of Local 250, affirming that the wrong notice was accidentally sent and that all reference to the final and binding nature of arbitration was removed from the union's policies. (Docket No. 138 at 2). Mr. Pedicone also states that on November 24, 2009, he sent a copy of the union's revised policy to all Plaintiffs by certified mail. (*Id.*).

Accordingly, Plaintiffs' challenge to the final and binding provision is now moot. Thus, the Court need not address the constitutionality of this provision.

### B. Calculation of Fair Share Fees[6]

In order to determine the propriety of Local 250's and its affiliates' fair share fee calculations in terms of its chargeable expenses, a review of the applicable law is in order.

In *Otto v. Pennsylvania State Educ.*, 330 F.3d 125 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit held that in the context of deciding whether certain union expenses may be charged to nonmembers, "the First Amendment affords public-sector employees the freedom not to associate with labor organizations." *Otto*, 330 F.3d at 128. In order to protect this right, *Hudson* clearly requires "an adequate explanation for the advance reduction of dues." *Id.*; *Hudso*n, 475 U.S. at 309. To this end, the Supreme Court has stated that "[t]here must be some indication that the payment is for services that may ultimately enure to the benefit of the members of the local union by virtue of their membership in the parent organization. And, as always, the union bears the burden of proving the proportion of chargeable expenses to total expenses." *Lehnert*, 500 U.S. at 592-93.

---

[6] *Hudson*'s progeny has interpreted the Supreme Court's holding to regard the questions of the adequacy of a union's notice and procedures as legal questions that may be resolved by a district court. *See Tierney v. City of Toledo*, 917 F.2d 927, 931 (6th Cir. 1990); *Mitchell v. Los Angeles Unified Sch. Dist.*, 739 F.Supp. 511, 514 (C.D. Cal. 1990); and *Laramie v. Cnty. of Santa Clara*, 784 F.Supp. 1492 (N.D. Cal. 1992).

Here, the Court finds that Local 250's chargeability categories remain over broad.  First, Local 250's statement that it claims fair share fees for "organizing" expenditures (*see* Docket No. 132-9 at 46) renders its accounting constitutionally invalid.   The Supreme Court has expressly stated that a union may not charge for such expenses.  *See Ellis v. Railway Clerks*, 466 U.S. 435, 451-53 (1984)("we think such expenditures [for organizing] are outside Congress' authorization").   The Supreme Court reasoned that because organizing money "is spent on people who are not union members, and only in the most distant way works to the benefit of those already paying dues," non-bargaining unit organizing may not be charged to nonmembers. *Id.* Local 250 may only charge Plaintiffs for organizing expenses related to the collective bargaining process. Because the current definition for chargeable expenses is not narrowed to this effect, Local 250's policies remain deficient.

Along these same lines, the PCT's charges for efforts to maintain membership and commitment among represented employees, and other services designed to strengthen the union (*see* Docket No. 132-9 at 31) are unconstitutional under the First Amendment. *Lehnert*, 500 U.S. at 592-93.   The PCT, as well as the JC and IBT, may not charge for expenses incurred in maintaining membership status, which is "aimed toward a stronger union." (Docket No. 132-9 at 21, 31, 40); *Ellis*, 466 U.S. at 451. Given the holding that unions cannot charge for expenses related to membership activities, *id.* at 451-52, the definitions of chargeable expenses contained in the PCT's, JC's, and IBT's notices violate Plaintiffs' First Amendment rights.

As noted in the Court's summary judgment Memorandum Opinion (Docket No. 66), the nonmembers cannot be required to contribute to costs related to political or other activities not associated with the union's role as a bargaining representative. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 234 (1977); *Lehnert*, 500 U.S. at 527.  Rather, chargeable activities include only

8

those that are "germane" to the collective bargaining activity and that do not substantially add to the infringement of First Amendment rights inherent in union shop fees assessed from state employees. *See Lehnert*, 500 U.S. at 519-20 (unions may not charge for activities related "not to the ratification or implementation of a [nonmember's] collective-bargaining agreement, but to financial support of the employee's profession or of public employees generally.").

In this instance, the JC's and PCT's broad chargeability definitions for expenses incurred in communicating with community groups, governmental agencies and the media do not comply with this rule. (*See* Docket No. 132-9 at 21, 31). The JC does not include terms limiting its chargeable lobbying activities to areas of public relations related to Plaintiffs' collective bargaining rights.  Additionally, the JC's language discussing "work-related" issues, in contrast to those specifically relating to Plaintiffs' collective bargaining agreement, is not sufficiently narrowed to conform to constitutional standards.  If Local 250's affiliates wish to charge for certain public relations and lobbying costs, they may only charge for those costs related to the "ratification and implementation" of Plaintiffs' bargaining rights. *Lehnert*, 500 U.S. at 528.

For these reasons, the Court finds that Local 250 and its affiliates' chargeability standards remain deficient pursuant to *Hudson* and *Lehnert*. Accordingly, Local 250 has failed to meet its burden in demonstrating the need for dissolution of the permanent injunction on this basis.

### C.  Local 250's Financial Disclosure for the PCT

Local 250's revised notice now includes accounting information for the PCT.[7] The union states in its notice that it paid $9,649 in per capita taxes to PCT for the year ending December

---

[7]     At the summary judgment stage, the Court held that Local 250's failure to provide financial disclosure for the PCT was unconstitutional pursuant to *Hudson* and *Otto*, *supra*. (Docket No. 66 at 18-19).

2008. (Docket No. 132-9 at 13). Plaintiffs are charged for 51.88 % of this amount, i.e., $5,006. (*Id.*).  As noted, Plaintiffs contend that the PCT's breakdown of chargeable categories into only five (5) categories is insufficiently specific. (Docket No. 133 at 10).

A union and its affiliates must provide "adequate disclosure [that] surely would include the major categories of expenses, as well as verification by an independent auditor." *Hudson*, 475 U.S. at 307 n.18.  The Supreme Court continues to recognize that there are practical reasons why "[absolute] precision" is required in the calculation of the charge to nonmembers. *Id.* (citing *Brotherhood of R&S.S. Clerks, etc. v. Allen*, 373 U.S. 113, 122 (1963)).  A union need not provide nonmembers with "an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses." *Id.*  The United States Court of Appeals for the Fourth Circuit has held that a union "must break its expenses into major descriptive categories and disclose those categories or portions thereof which it is including in the fee to be charged." *Dashiell v. Montgomery County Md.*, 925 F.2d 750, 756 (4th Cir. 1991). In *Otto*, *supra*, the United States Court of Appeals for the Third Circuit adopted this view, while recognizing that this decision might place high costs on some local unions, but that is how *Hudson*'s requirement of verification by an auditor is to be read. *Otto*, 330 F.3d at 135. This rule developed based on the premise that a nonmember has the right to know how his fees are being spent "prior to objecting so that [he or she] may evaluate the basis for an objection and consequently protect [his] First Amendment rights." *Hohe v. Casey*, 956 F.2d 399, 409-11 (3d Cir. 1992).

In order to determine the sufficiency of Local 250's disclosure for the PCT, as noted by Plaintiffs, it is important to compare this disclosure (Docket No. 132-9 at 29) with that of the disclosures for the other affiliates, the JC and IBT. (Docket No. 132-9 at 6-9). Local 250's own

disclosures breaks down its expenses into seventeen (17) categories, the JC into nineteen (19) (Docket No. 132-9 at 19), and the IBT into thirty-seven (37). (Docket No. 132-9 at 37-38). Given these categorizations, in this Court's estimation, the PCT's disclosures are inadequate because the PCT breaks down its expenses into only five (5), very broadly defined categories. (See *supra* at page 5). While Local 250 and the PCT do not have to obtain the "highest possible level of audit," *Otto*, 330 F.3d at 134 (citation omitted), the current audit for the PCT falls short of what is constitutionally required. Based upon the information Plaintiffs have now, they would be unable to decide whether there is "any reason to mount a challenge." *Pennrod v. NLRB*, 203 F.3d 41, at 46 (D.C. Cir. 2000)(holding that *Hudson* requires a union to explain how its affiliate used money that was ultimately charged to the nonmembers).

At the hearing, Local 250 argued that it cannot obtain the necessary information from the PCT nor make the PCT change its accounting.[8]   However, if Local 250 cannot disclose to the nonmembers how the PCT funds are spent, then the union may not include the $5,006 payment to the PCT in its chargeable costs. *Otto*, 330 F.3d at 135; *Teirney*, 917 F.2d at 937. Plaintiffs are constitutionally entitled to sufficient disclosure so that they may evaluate the basis for an potential objection. *Otto*, 330 F.3d at 135; *Hohe*, 956 F.2d at 411. Having ruled that Local 250's disclosure for the PCT is inadequate, Local 250's motion is denied.

### D.    Charging for "Professional Fees"

Plaintiffs raised an argument at the hearing that allowing Local 250 to impose upon them the cost of its defense in this suit, as well as the cost of other litigation expenses not related to

---

[8]

The Court notes that the PCT is not without options. For example, if the PCT is concerned about the cost of a more in-depth audit, it has the option of entering into combinations with Local 250 or other small union locals to achieve necessary economies of scale. In the alternative, the state or national unions might choose to subsidize the cost of the local unions' audits. *See also Otto*, 330 F.3d at 135 (noting the same).

collective bargaining litigation, is "perverse" within the meaning of the Supreme Court's holding in *Ellis*, *supra*. Plaintiffs contend that doing so would also be contrary to the purposes and intent of 42 U.S.C. 1988 to "encourag[e] individual citizen[s] to seek redress" if they are compelled to subsidize their litigation opponent's costs, citing to *Isaacs v. Temple University*, 467 F.Supp. 67, 69 (E.D. Pa. 1979).[9] The nonmembers specifically challenge Local 250's accounting for chargeable expenses, which provides that Plaintiffs are charged for 100% of "professional fees." (Docket No. 132-9 at 6). These fees are defined by the union to include "legal fees and expenses, arbitration fees and accounting and auditing fees. These expenses are directly related to the operation of the organization, and as such are chargeable." (Docket No. 132-9 at 12). Local 250 argues in response that the accounting for "professional fees" has never been challenged before, therefore, the union believes it may charge for these expenses.

In *Otto*, *supra*, the Court of Appeals for the Third Circuit noted that litigation expenses not related to the collective bargaining process are classified as "extra-unit litigation expenses." 330 F.3d at 135 (citing *Ellis*, 466 U.S. at 453). In addressing whether a union may charge non-members for their *pro rata* share of expenses related to litigation, the *Otto* court reiterated *Ellis*'s holding:

> A union may not charge non-union members for certain extra-unit litigation expenses. While expenses of collective-bargaining-related litigation arising from the non-members' bargaining unit are clearly chargeable to that employee, the expenses of litigation not having such a connection with the non-members' bargaining unit are not to be charged to objecting employees.

---

[9]

According to the so-called "American Rule," parties are required to pay their own attorneys' fees. *In Re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009). Fee shifting occurs, however, when one party is compelled by statute to bear the opposing party's fees. *Id.* (citing *Alyeska Pipeline Syc. Co. v. Wilderness Soc'y.*, 421 U.S. 240, 269-70 (1975)).

*Otto*, 330 F.3d at 135-36 (citing *Ellis*, 466 U.S. at 453). Furthermore, in *Lehnert*, the Supreme Court concluded the following:

> A union may charge non-union members for their pro rata share of expenses incurred on behalf of affiliate bargaining units when there is some indication that the payment is for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization.

*Otto*, 330 F.3d at 136-37 (citing *Lehnert*, 550 U.S. at 524). In short, to prevent the burdening of free speech, a union may only charge nonmembers for those expenses "germane" to the collective-bargaining activity. *Lehnert*, 550 U.S. at 519.

Given this authority, Local 250 may not charge the nonmembers for legal fees "not having such a connection with the bargaining unit," such as legal fees incurred in defending Plaintiffs' claims in this case. *Ellis*, 466 U.S. at 453. If the converse were true, what incentive would nonmembers have to challenge a union's charging them for costs incurred to convince them to become members? The disposition of this issue is controlled by *Ellis* and *Lehnert*. The definition of "professional fees" provided by Local 250 does not ensure that said expenses are related solely to collective bargaining related litigation (which would be chargeable to Plaintiffs). Therefore, the Court finds that Local 250's standard of chargeability of "professional fees" is unconstitutional.

**VI. Conclusion**

For the foregoing reasons, Defendant Local 250's Motion to Dissolve the Permanent Injunction (Docket No. [132]) is DENIED, without prejudice, the Court having found that Local 250 has failed to meet its burden of demonstrating exceptional circumstances warranting the dissolution of the permanent injunction through compliance with *Teachers Local No. 1 v. Hudson*, 475 U.S. 292, 306-10 (1986), and *Lenhart v. Ferris Faculty Ass'n.*, 500 U.S. 507

13

(1991). Local 250 may renew is motion upon a showing that its has revised its policies and accounting procedures to fully comply with applicable constitutional standards, in accord with this Opinion and this Court's earlier Opinion at Docket No. 66.   An appropriate Order will follow.


_s/ Nora Barry Fischer_
Nora Barry Fischer
United States District Judge


cc/ecf: All counsel of record.